Thank you. Good morning. May it please the Court, my name is Melissa Ingalls. I represent DirecTV. Good morning. There are two arbitration orders that were issued by the District Court that are before the panel today. The first one was issued in 2010 before the United States Supreme Court made their ruling in AT&T Mobility v. Concepcion. And that 2010 order denied arbitration between DirecTV and some of the plaintiffs from certain states in this multidistrict litigation. And the ruling was based on an unconscionability determination because the arbitration agreements have a class waiver. And the second order is from 2011 post-Concepcion where the District Court actually granted arbitration of all of the plaintiffs' remaining claims. But the District Court ended up denying their injunctive relief claims from going to arbitration because they were asserted under the UCL and CLRA and the District Court relied on the California Broughton-Cruz rule. Now since the parties completed briefing on both of these appeals, as I'm sure the panel is aware, there's been a number of additional decisions that have come out from the Supreme Court. He's aware. I just play along. And from the Ninth Circuit as well, that in our view when you combine those decisions with the Concepcion decision, that all of the issues that have been raised by these two District Court opinions have been resolved and actually require reversal of the District Court's denial of arbitration. So I'll begin with the District Court's 2010 order. With regard to that order, Concepcion at a minimum requires reversal of that order because it made the determination that the arbitration agreements were unenforceable because they contained class waivers. And in fact, the District Court itself in its 2011 order recognized that it needed to reconsider and change its decision based on Concepcion. The District Court actually rendered an indicative ruling along those lines. And now we have from the Ninth Circuit a decision in the case called Murphy v. Direct TV, which came down a couple of months ago, where the Ninth Circuit has now ruled that the same arbitration agreement at issue in these two District Court decisions is, quote, enforceable under Concepcion. Now, nonetheless, plaintiffs in their answering brief have offered up a couple of additional alternative ground arguments to try to confirm the District Court's 2010 order. And they make a couple of arguments. The first is a contract interpretation argument, which the plaintiffs assert that based under the language of the arbitration agreement itself, that the parties agreed to apply preempted state law to the enforceability of the arbitration provision and not the Federal Arbitration Act. That exact argument was decided by the Ninth Circuit in Murphy v. Direct TV, and the Court rejected that argument in coming to its conclusion that arbitration agreement is, in fact, enforceable under Concepcion. So based on Murphy, that issue has been conclusively resolved in favor of arbitration. Next, the plaintiffs also argue that enforcing the arbitration agreements at issue here with the class waivers would prevent them from the effective vindication of rights because it would be too expensive for them to pursue their individual claims in arbitration. Now, the United States Supreme Court decision in American Express v. Italian Colors, which along with the Ferguson decision that came out from the Ninth Circuit last week, conclusively resolves that issue because it's now been decided that the effective vindication doctrine does not apply in a situation like we have here where the plaintiffs are pursuing state law claims. So between Murphy v. Italian Colors and Ferguson's interpretation and application of Italian Colors, we now have their two main arguments that they put forth in their answering brief, the plaintiffs' main two arguments in their answering brief, conclusively resolved in favor of arbitration and require reversal of the district court's 20,010 opinion. Now, although the Ninth Circuit has already ruled in Murphy that the arbitration agreement that is at issue here with the class waiver is, in fact, enforceable under Concepcion, we acknowledge that the plaintiffs make one last argument related to unconscionability in their answering brief. And it's actually an argument that they raised with the district court in the 20,011 order, and the district court rejected it, but it has to do with their view that the arbitration agreement is not mutual enough and is therefore unconscionable. And they make that argument based on the fact that there is a carve-out in the arbitration agreement for claims related to signal piracy, and those claims can be pursued in court by both the plaintiffs and DIRECTV, and that's what the district court recognized in its 20,011 order. The district court ruled in its 20,011 order that plaintiffs' mutuality argument was based on what he deemed a faulty premise, because when you look at the arbitration agreement itself, it requires the parties to arbitrate all legal and equitable claims that they have between them, but they also, both of them, can pursue signal piracy-related claims in court. And because both the plaintiffs and DIRECTV were empowered to pursue the same type of claim in litigation, the district court, in its 20,011 opinion, decided that the mutuality argument failed. How can a consumer have a signal piracy claim against DIRECTV? There in fact have been court cases filed by residential customers over signal piracy claims, because if DIRECTV makes any sort of assertion against a residential customer that they're doing something wrong, they can sue back to DIRECTV for saying that they haven't done anything wrong. Well, it's kind of a bounce-back claim, but it's hard for me to imagine how a customer could ever have a lawsuit for the filing fee. But thinking seriously, is there any realistic circumstance where a customer could have such a claim when it wasn't simply responding to a previous assertion by DIRECTV? Well, if you mean by previous assertion that DIRECTV has to sue first, I believe that they in fact can have a claim without DIRECTV suing first. If in fact they're also, and I haven't studied the signal piracy statutes in depth to know all the different pieces of it, but I think what Judge Guilford recognized was that it's feasible that perhaps if there's a residential customer who thinks somehow DIRECTV has stolen something of its and is broadcasting it improperly, I don't think that that's completely out of the question. But I do know that the ones that have actually been filed have been the types of claims where DIRECTV has asserted, if not in litigation but otherwise, that a customer has in fact been doing something wrong and the customer has sued saying that's not true. Sued or counter-claimed? Not counter-claimed, sued. It's based on what the district court decided in its 2011 order. And this district court is not alone in how he viewed the mutuality argument asserted by these plaintiffs. There are a number of other courts, both in California and elsewhere, dating all the way back to 2002 in the Bischoff case where Judge Marshall in the Central District recognized in her view that this was a mutual arbitration provision going all the way through to different cases from district courts in 2013 seeing the same thing. But to the extent that there was any state law, and I'm not saying that there is in this case, because I don't believe that the laws of Arizona, Florida, Illinois, Pennsylvania and Virginia, which are the ones at issue in the 2010 order, I don't believe they have this kind of law, but if there were a state law that required for purposes of an arbitration agreement itself full and complete mutuality of every type and that did not allow for the carve-out of any sort of claim to go to litigation by either party or by both parties, we'd submit that that state law would not be permissible under the FAA because it does not treat an arbitration agreement the same way that you would treat any other regular contract, which does not require the full mutual obligations by the parties under a contract. In our view, when you take the Murphy case, Concepcion, Italian Colors and the Ferguson case, we do not believe that there is any basis whatsoever for not enforcing the arbitration agreements between DIRECTV and the plaintiffs in the 2010 appeal. And I can go a little deeper into the unconscionability arguments if the panel would like, but before we do that, I do want to mention the 2011 order. That was the order in which the district court granted arbitration of all of the plaintiffs' remaining claims, and the one thing the court denied arbitration of was the UCL CLRA injunctive relief claims purely on the Broughton Cruz rule, which last week the Ninth Circuit ruled in an intervening and controlling opinion that the Broughton Cruz rule is preempted by the FAA. So I believe that that has been conclusively resolved, and in fact, I believe the plaintiffs in one of their recent Rule 28J letters has admitted that that last issue in the 2011 appeal has actually been resolved. And we'd ask that the court- They said it was wrongly decided. What's that? I think they said it was wrongly decided. I believe that's what they said as well. So we would ask that the court, with regard to the 2011 appeal, reverse the district court's decision, remand, and compel all of the remaining claims to arbitration. And if there are any questions, I'll reserve my last few minutes for rebuttal. You may. Thank you. Good morning, Your Honor. Jonathan Selden on behalf of plaintiffs, the consumers. I want to address a couple of points about each of the appeals, the Cahaley and the Lombardi. But before I do that, I think it's really important to address one issue that underlies both and that I do not believe counsel addressed in her opening portion, which is that these are take-it-we've called these take-it-or-else arbitration clauses. And there's a reason we've done that, because the Supreme Court has told us now in Concepcion in no uncertain terms, and I disagree with it, but that doesn't matter, that take-it-or-leave-it is just the price of doing business in our modern economy. That's just the nature of contracts between consumers and businesses. These clauses are a little more Old Testament than modern economy. These are take-it-or-else clauses. Now, it may not be as dramatic as coming for your firstborn, but the first time and this is very important, this is the contract formation issue, the very first time you are provided with the full arbitration agreement, if you decline, if you say, I do not want to be bound by this arbitration agreement, you are hit with the very fee, the early cancellation fee, $480, which they simply deduct from your credit. Direct TV denies that. They do. And I'm going to walk through the record, because the record is actually undisputed on this. Is there any evidence of somebody having been charged such a fee in that circumstance? Absolutely. Plaintiff Cahaley was charged that fee in that circumstance. She never got her service. If you go look at her allegations in her complaint, and the record supports all of those allegations. She signed up for Direct TV. She got her first bill. They were charged $480 to her credit card. So absolutely that's the case. And I'm going to walk through, Your Honor, I have the record sites, because they have disputed this again and again. They have accused us of making up the record here. We haven't made up the record here. The facts are actually undisputed. The interpretation of those facts is different. So in your brief, do you lay out these record references? We do. We do. Everything I'm going to provide, Your Honor, is in the record. So let's turn to that, because that's, I think, the single most important issue here today. Where in your brief? Your Honor, I don't have the page sites from the brief, but I've got the record sites that then tie to the brief that are all laid out in the brief. There's nothing here that's not in our brief on this. The full arbitration agreement is not provided until you sign up after installation with the first bill. That's FER 351 to 352. Well, if your brief tells us the theory, you don't have to spend 10 minutes walking us through the record references. Is there – you told me there is evidence of somebody who actually had this experience. Where is that in the record? It's Ms. Cahaley's experience, and it's in the complaint. And then, unfortunately The complaint's not exactly I understand. I understand, Your Honor. What's not disputed is the process that DirecTV goes through with everybody. And Ms. Cahaley's experience Well, let me go back to the question I posed before, to which I think I received the answer yes. Is there anything in the record reflecting evidence of somebody actually being charged this fee? Under these circumstances, you told me yes. I said where is it? You tell me the complaint. That's not evidence. Where's the evidence in the record? I understand, Your Honor. Ms. Cahaley's forms, the documents I take it there's not evidence in the record. There is evidence in the record. Here's what's a little confusing. I'm not trying to dissemble here, Your Honor. The process Look, I understand the theory if you say how this could be charged. Right. And I'm not saying there's evidence in the record. There is no charge, as far as I know. It's just a bare assertion. But this seems like an odd place to be debating facts. We never got into discovery, Your Honor. This was all done Well, your plaintiff doesn't need discovery as to what she was charged I understand. I understand. The declaration that she submitted below, Your Honor Okay. With the briefing. I apologize. And as I was preparing for today's argument, what I realized is that her signed documents, the forms that match, that are identical to what's in the record, there are exemplars in the record. Her actual versions of them are in the record below. They are not the versions she signed, which again are identical, that have her signature on them and that were sent to her, are in the record below. If they're in the record here, it may not be in the excerpt, but it's still in the record. Yes, Your Honor. And so if you walk through the process Does she have a declaration saying I was charged this way? Yes. Where's that? Is that the part of the reference in the record below? I don't know of a record on appeal, Your Honor. Okay. Well, if it's in the record below, it's part of the record on appeal. It may not be in the excerpt, but that's okay. Yes. Okay. Fine. And I apologize, Your Honor. The process point matters, though, because this is what I think has been confused by the arguments that Direct TV has made. They say in a declaration, it's in the record and it's in the excerpts of the record, that the entire customer agreement is governed, the entire relationship is governed by the customer agreement. That customer agreement is not sent until your first bill. At that point, you've ordered, you've gotten a confirmation letter back. The confirmation letter does not include the full arbitration agreement. It does say, and you'll find this in the record. We know that. That you're bound by an arbitration agreement. Yes. You then have an installation. You get it with your first bill and you can go online and look at it. But there's no requirement that you actually go online and look at it. No, you can't. You can't. And there are cases that talk about clicking through. There are cases involving computer products where you order things online where you click, I've seen this, I've read it, I agree to it. That's not what happens here. So you're mispronouncing it. You're given notice that there's an arbitration agreement, but you're not actually provided the arbitration agreement when you sign up. You then have somebody come out to your house and install the DirecTV service. At the end, there's a thing about installation checklists. On the back of that document, buried down, I believe it's the 12th of 13 bullet points, there is something again that says, you're bound by an arbitration agreement. It's not provided and they don't point there to the website. That you sign. You actually sign that document. But it doesn't tell you where the arbitration agreement is. It just gives you notice that there's an arbitration agreement. With your first bill, when it arrives, you finally get the full arbitration agreement. If you decline at that point, you're subject to the $480 early cancellation fee and a $150 non-activation fee. I don't believe they imposed that on Ms. Murphy. They are entitled to impose it. That's the factual record that we have here. Now, I agree that the Murphy v. DirecTV case ruled, I think, in dicta, in footnote 4, because they say the issue wasn't preserved. Well, we think that this arbitration agreement satisfies that it's binding. The problem is, nothing to my knowledge in the Murphy case focused on this take it or else feature of the arbitration agreement. Nobody pointed out, to my knowledge in that case, that if you decline the arbitration agreement, you were hit with these fees. Well, those fees are exactly what this litigation is about. This litigation is about whether those fees are proper under California law. Again, it's not exactly them coming for your firstborn, but they just charge your credit card $480, and they did to Ms. Cahaley, if you decline the arbitration agreement. To us, that underlies all of the appeal here. We recognize we can no longer argue that the class waiver means that the arbitration clause is invalid. That was the law. It's not the law anymore. We recognize that. We recognize that a number of the other arguments we raised, the contract interpretation argument, have been resolved against us. Nothing about this argument requires the Court to rule based on those issues. From our perspective, there has to be something left of unconscionability after Concepcion. And I would argue that Your Honor's opinion, Judge Clifton's opinion, in the Chavarria case says that. I was prepared to come here to argue there must be something left of unconscionability. Your Honor has said that. The Ninth Circuit giveth, the Ninth Circuit taketh away. Absolutely, Your Honor. And I'm hoping to get you to think that on the other issue. But I think in particular, and we've pointed this out to the Court, Justice Thomas's concurrence in both Italian colors and, more importantly, in the Concepcion case, he goes out of his way to make the point that there's got to be something left of unconscionability. And certainly, duress is one such thing. Well, it's hard to imagine, short of a gun to the head, something worse than saying to somebody, if you don't agree to this arbitration agreement, we're going to charge you $480 without even asking you. And that's what we have here. I want to say a couple things about the brought-and-proved rule. Well, put this into context. I mean, different states have different requirements or standards for unconscionability. That's right. So we've got this mosaic of states in front of us. California, the one we're most familiar with that comes up in Chavarria, has this requirement you have both procedural and substantive unconscionability. That's right. So walk us through. Sure. How does this qualify in your view? Well, I think there's no question that merely a take-it-or-leave-it clause like this one, that you don't get until after the fact, is procedurally unconscionable. The question then becomes what makes it sub-certainly unconscionable. We've got the mutuality argument. I think Your Honor asked exactly the right question, how many consumers are affirmatively suing DirecTV over piracy. Well, that invites another question. What is it under California law that finds that as to be unconscionable? And is that a California rule aimed specifically at arbitration as opposed to other things? I don't think there's anything about this rule, as Your Honor said in the Chavarria case when analyzing unconscionability. There's nothing uniquely aimed at arbitration. Sure it is. You're saying you can't have arbitration. There's no doubt there's mutuality in the contract as a whole. Your complaint is that the arbitration clause is uniquely confined to itself, not mutual, because both sides don't have an equal likelihood of asking for arbitration. Well, that's a rule aimed specifically at arbitration. I don't think that's right, Your Honor. I would submit that it's, as you said in Chavarria, it's agnostic, because if it were always the case that any time you said an arbitration clause was unconscionable, that therefore you were aiming specifically at an arbitration clause, you got a foul. No, I'm saying something different.   That's a rule aimed specifically at saying a certain kind of claim can't properly go to arbitration. And you're saying a contract claim can't go to arbitration if the likelihood of seeking arbitration or the availability of arbitration isn't equal. In Chavarria, the defect was that the arbitration itself was found by the panel to be unbalanced. Nothing unbalanced about the arbitration process here. So why isn't this a rule, if there is a California rule requiring an arbitration clause to be mutual, why isn't that a rule aimed uniquely at arbitration? Because if the rule were, as Your Honor is suggesting, then our only challenge could be to the contract as a whole, which would not be a challenge we could ever bring in court, because under Prima Payne, and I think it's Buckeye cashing, that has to go to the arbitrator in the first instance. And I think the court, the case law has been clear for many years, and I don't think there's anything that I'm aware of in Concepcion that's changed that, that basic rules of unconscionability still apply, and in particular, again, duress, which is what we have here. But you're not complaining about duress as to the contract. We are. We are, because what we're saying is that while we agreed, we contracted for direct TV services, we were never told that we were contracting that if we declined an arbitration agreement, we would be hit with a $480 charge. So, yes, it is a unconscionability argument, because under California law, providing that term after the fact is not mutual agreement on that term, and it has a particularly heinous sort of effect if you don't agree to it, because you can't just decline it. You can't just walk away. And so I don't think that's aimed at arbitration. It happens to involve an arbitration clause. That's why I say it's agnostic. But if every challenge to an arbitration clause necessarily violated Concepcion, then there would be nothing left of unconscionability. And I don't think that's what the Supreme Court said in Concepcion. And, again, particularly I would point to Justice Thomas's fifth vote concurrence in that case, which makes it clear that there are some fundamental things about contract formation defenses with respect to an arbitration clause that survive, and that's where our argument comes in. It's about the contract formation with respect to the arbitration clause. Ms. Cahaley knew that she was contracting for direct TV services when she signed up for them. That was her intent. What she didn't agree to, because she wasn't told in full what it was about, was the arbitration clause. So it is a contract formation argument limited to the arbitration clause. And under Concepcion, that has to survive, because otherwise there's no point to Justice Thomas's concurrence. And I think that this panel recognized some of this, that on a fact-by-fact basis, you can still have unconscionability after Concepcion. And that's our argument here. And I think that the California Supreme Court's opinion in Sonic Calabasas also reaffirms that. I see I have just a minute left, and I do want to address the Italian colors brought in Cruz issue. Respectfully, we think the Court got it wrong in the Ferguson case, and I just want to explain why. Italian color says that it's fine to change the forum. You don't have to go to court. It's fine to say you have to go to arbitration. Italian color says that it's fine to alter the procedural rules within some very small limits. It's fine to alter the procedural rules. Italian color says that it's fine to alter those rules to a degree that it's practically impossible to win. That's the holding of Italian colors. We acknowledge that. But what Italian color says you cannot do is eliminate an entire substantive remedy. That's 133, Supreme Court at 2310 and 2311. You can't remove an entire category of substantive remedy. And that's what is happening here. Because a public injunction, a public injunction under the CLRA and the UCLA is a And last point, I see I'm out of time. Effective vindication is not, in our view, limited to Federal law. I would point Your Honor to the analysis in Sonic Calabasas that points that out. Particularly in areas of traditional State sovereignty like consumer protection, States have the ability to still control those areas. Respectfully submitted, Your Honor. We'll hear rebuttal. And I'll just take on the points regarding the new duress argument and what were previously the unconscionability arguments that counsels made about Plaintiff Kahaley. The record, if the Court is so inclined to take a look at it, is not the way that it is being portrayed here during argument. Ms. Kahaley did sign an equipment lease agreement. She did get notice of the arbitration provision. She did not call to reject the arbitration provision and then get assessed a fee the way that they're saying that it happened. I also think it's important to point out. Was she assessed a fee? She eventually was assessed a fee for canceling her service, correct. Did she say anything about the arbitration clause? No. So that's the point of difference that you're raising. Correct. But it's also a difference between somebody getting the customer agreement and saying, I just can't agree to this. Yeah, I got notice of it. Yeah, I signed an agreement that I would abide by it. But I just can't agree to this. The policy at DirecTV, if that's the case, you don't get assessed an early cancellation fee. But you also can't take and accept the customer agreement, get service for some period of time, call up and say, I'm dissatisfied. Did she get service for some period of time? She did get some service for some period of time. And that's the difference. But I'd also like to point out that Ms. Kahaley is one of the California plaintiffs in the 2011 order. She is not a plaintiff in the 2010 order. Judge Guilford assessed all of the arguments they made about the California plaintiffs, and he rejected them. This argument that they're trying to make, Judge Guilford did not buy, that is not actually an issue on appeal for the California plaintiffs. There are arguments that you made to Judge Guilford that you previously didn't buy, and that doesn't stop you from arguing about them. That's true. But it is not something for them to seek reversal on based on this particular plaintiff under California law. I also want to remind the court – I'm sorry. On this Kahaley cancellation, where is it in the record? There is a – there are – what do I say? There are declarations that were submitted by DIRECTV. There was a lengthy declaration submitted for the 2010 order that's before the court. There was a declaration submitted for the 2011 order in front of the district court. Both of those declarations are in the supplemental excerpts of record. I don't have the exact citation to them, but they are in the record. The last point I'll make is that one of the things about this new contract formation argument that I'd like to point out, and this is important to understand where Judge Guilford was coming from when he was dealing with that, is that the plaintiffs always conceded in the district court that a valid arbitration agreement was in fact formed between the plaintiffs and DIRECTV. So this is not a formation argument that they're making. They are making a procedural unconscionability argument, which it makes it sound like the panel understands, and it only goes to procedural unconscionability. They have not yet – and again, back up to procedural unconscionability. The procedural unconscionability laws that are at issue are not California law. They are Arizona, Florida, Illinois, Pennsylvania, and Virginia law, and we have set forth all of those standards in our briefs. And they are not exactly the same as California procedural unconscionability standards. And in our view, based on the record, and the record is plaintiffs get notice, plaintiffs get equipment lease agreements that they sign that have the arbitration provision mentioned and where to find it, and they get the arbitration agreement with an opportunity to cancel if they don't want to accept the customer agreement. Under those circumstances – But with a fee. I'm sorry? But with a fee. No. That's not true. If they call to cancel because they don't want to accept the customer agreement, it is not DIRECTV's policy to assess early cancellation fees. That is just not – and there's nothing in the record that suggests that that's the case. And in fact, you know, putting aside Ms. Kahaley's situation, since I don't believe she's the right plaintiff in the appeal that's really at issue, which is the 2010 order on unconscionability, most of these plaintiffs were DIRECTV customers for a long time and had accepted the customer agreement for years, long before they got to the point where they were entering into programming commitments or dealing with early cancellation fees for – You mentioned the different states. I have a question. I understand Illinois requires both procedural and substantive unconscionability? Actually, no. In Illinois, it's the one state that's at issue that if the procedural unconscionability is sufficiently extreme that procedural could by itself be a basis for finding something unconscionable. I think what's meaningful to this case is that we've already had the Illinois courts take a look at the DIRECTV arbitration agreement, and in fact they have found it to be neither procedurally unconscionable nor substantively unconscionable under Illinois law. Have you cited the case where the – Yes, it's the Harris v. DIRECTV case. There's also the Best v. DIRECTV case, both from 2008. I don't know that we cited Best, but we definitely cited Harris. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Goodwin, Fisher, Clifton